## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

URBANIMAGE MEDIA LTD.,
      *Plaintiff*

-vs-

IHEARTMEDIA, INC.,
      *Defendant*

§
§
§
§
§
§
§
§
§
§

SA-24-CV-00623-XR

## <u>ORDER</u>

On this date, the Court considered Defendant IHeartMedia, Inc.'s ("IHeartMedia") Motion to Dismiss (ECF No. 13), Plaintiff Urbanimage Media LTD's ("Urbanimage") Response (ECF No. 14), and Defendant's Reply (ECF No. 17). After careful consideration, and the parties' oral arguments on April 17, 2025, the Court issues the following order.

## I. BACKGROUND

A. Factual Allegations

The following allegations are presumed true for the purposes of the motion to dismiss. In January 1990, third party Adrian Boot first published a photograph ("Photograph") of musician Tom Waits. Amended Complaint ("AC") ECF No. 12 at ¶ 12.

EXHIBIT 1: PHOTOGRAPH



ECF No. 12-1.

Nearly thirty years later, in 2018, the Photograph was registered by the United States Copyright Office under Registration No. VA 2-110-511. AC ¶ 14. Subsequently, Boot assigned all rights in the Photograph, including the right of copyright enforcement, to Plaintiff. AC ¶ 15. Plaintiff acquired the rights to the Photograph with the intent to commercially license the Photograph. AC ¶ 16.

Plaintiff alleges that Defendant displayed the Photograph on its website in July 2021,[1] (AC ¶ 22), with Defendant noting that the Photograph was in a YouTube video that was embedded on IHeartMedia's webpage in connection with an "in Memoriam" article surrounding the death of Chuck E. Weiss. ECF No. 13 at 10.



ECF No. 12-2.

---

[1] Urbanimage alleges that IHeartMedia is the registered owner and operator of a website known as kbco.iheart.com and is responsible for its content. AC ¶ 3.

Defendant asserts that Plaintiff's Exhibit Two is a "screengrab" of the YouTube video that was embedded on the website of its radio affiliate in Denver, Colorado. ECF No. 13 at 10.

### B. Embedding

The concept of "embedding" is uncontested, and the Court adopts then-Judge Forrest's explanation below.

> A webpage is made up of a series of instructions usually written by coders in Hypertext Markup Language ("HTML"). These instructions are saved to a server (a computer connected to the internet), and when a user wishes to view a webpage, his or her computer's browser connects with the server, at which point the HTML code previously written by the coder instructs the browser on how to arrange the webpage on the user's computer. The HTML code can allow for the arrangement of text and/or images on a page and can also include photographs. When including a photograph on a web page, the HTML code instructs the browser how and where to place the photograph. Importantly for this case, the HTML code could instruct the browser either to retrieve the photograph from the webpage's own server or retrieve it from a third-party server.
>
> "Embedding" an image on a webpage is the act of a coder intentionally adding a specific "embed" code to the HTML instructions that incorporates an image, hosted on a third-party server, onto a webpage. To embed an image, the coder or web designer would add an "embed code" to the HTML instructions; this code directs the browser to the third-party server to retrieve the image. An embedded image will then hyperlink (that is, create a link from one place in a hypertext document to another in a different document) to the third-party website. The result: a seamlessly integrated webpage, a mix of text and images, although the underlying images may be hosted in varying locations. Most social media sites—Facebook, Twitter, and YouTube, for example—provide code that coders and web designers can easily copy in order to enable embedding on their own webpages.

*Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018).

Here, it is undisputed that Defendant's website embedded the Photograph by including the necessary embed code in their HTML instructions. As a result, the Photograph appeared within IHeartMedia's website "in Memoriam" article even when a reader took no action to retrieve or navigate to the YouTube video. *See* AC ¶ 23; ECF No. 12-2.

### C. Procedural Background

On June 6, 2024, Urbanimage sued IHeartMedia for copyright infringement. ECF No. 1.

On October 21, 2024, Urbanimage filed an amended complaint that brings a claim of direct copyright infringement, alleging that IHeartMedia improperly and illegally distributed and publicly displayed its copyright protected Photograph without permission or authorization in violation of its rights under 17 U.S.C. § 501.[2] *See* AC. Plaintiff alleges that the Photograph is a virtually identical copy of the Plaintiff's original image and that Defendant publicly displayed the Photograph without license or permission. AC ¶¶ 25, 27.

Thereafter, IHeartMedia moved to dismiss pursuant to Federal Rule of Procedure 12(b)(6). ECF No. 13. Plaintiff filed a response, and Defendant filed a reply.

The Court heard the Parties' oral arguments on April 17, 2025, wherein both Plaintiff and Defendant agreed this case involves a pure legal issue and therefore is appropriate for the Court's consideration on the 12(b)(6) motion.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2] 17 U.S.C. § 106(3) provides that a copyright holder has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Plaintiff's amended complaint cursorily alleges infringement of the right of distribution (ECF No. 12 at ¶ 48), but contains no facts that give rise to the inference that Defendant engaged in the sale, transfer of ownership, rental, lease, or lending of the work. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss makes no reference to a claim of infringement of the right to distribution. *See* ECF No. 14.

Despite Defendant's Motion to Dismiss addressing the lack of facts supporting a distribution claim (ECF No. 13 at 16), Plaintiff has not amended its claim nor further referenced the distribution claim in subsequent pleadings. Thus, Plaintiff has abandoned this claim. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

*Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## III. DISCUSSION

Defendant argues under Rule 12(b)(6) that Plaintiff has failed to state a claim for infringement of the Copyright Act's right of display. Defendant contends that embedding the Photograph is not a "display" under the Copyright Act. Relying on the Ninth Circuit's server test, first announced in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), Defendant has framed the issue as one in which liability is determined by the physical location and/or possession of an allegedly infringing image. Defendant contends that *Perfect 10* is settled precedent that should determine the outcome of this case. On the other hand, Plaintiff contends the server test violates the plain text of the Copyright Act and contradicts its legislative history.

### A. Copyright Infringement

"A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017) (citation omitted).

#### 1. Ownership

The Amended Complaint alleges Urbanimage owns the Photograph, and the Photograph has been properly registered with the United States Copyright Office. AC ¶¶ 10–15, 46. Defendant does not argue that Urbanimage does not own the photograph, nor does it otherwise challenge the underlying facts regarding registration. Urbanimage's pleadings are sufficient to meet the first element.

#### 2. Copying

The second element of a copyright infringement claim—copying—requires a showing of (1) factual copying and (2) substantial similarity. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491,

499 (5th Cir. 2012). In this case, only factual copying is at issue.[3] "'Copying' occurs when the defendant infringes any of the copyright owner's exclusive rights established by the Copyright Act." *Bowery v. Sites*, No. 2:21-cv-567-DBB-JCB, 2024 WL 3416038, at *6 (D. Utah July 15, 2024) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("To state a claim for copyright infringement, a plaintiff must plead ownership of a valid copyright and that the defendant has violated at least one of the owner's exclusive rights under 17 U.S.C. § 106 . . . ."); *accord Cooper v. Harvey*, 108 F. Supp. 3d 463, 473 (N.D. Tex. 2015) (holding "a plaintiff bringing a claim for copyright infringement must establish: '(1) ownership of a valid copyright; and (2) that a defendant violated one or more of the plaintiff's exclusive rights under the Copyright Act.'") (first quoting *Atl. Recording Corp. v. Anderson*, No. H-06-3578, 2008 WL 2316551, at *6 (S.D. Tex. Mar. 12, 2008); then citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)). The Copyright Act's exclusive rights include, among other rights, the right to display a work publicly. *See infra* p.8.

Urbanimage pleads that IHeartMedia has copied the Photograph and publicly displayed the Photograph on its website thereby constituting willful copyright infringement. AC ¶¶ 4, 48–49. Defendant asserts under the server test that it has not displayed the Photograph but has simply embedded a video containing the Photograph in an article on its website containing the Photograph. ECF No. 13 at 12–15.

The plain text of the Copyright Act, the legislative history behind its enactment, and subsequent Supreme Court Jurisprudence provide no support for the server test, a rule that allows

---

[3] "Substantial similarity" asks what level of 'sameness' is evident when comparing the original from the copy. The Defendant argues exclusively that there has been no factual copying because the work is embedded, but offers no substantive argument that the Photograph on its website is not the 'same' as the Plaintiff's Photograph.

physical location or possession of an image to determine whether a work has been "displayed" within the meaning of the Copyright Act. Moreover, the Court finds Defendant's policy argument unpersuasive. For the reasons stated below, the Defendant's Motion to Dismiss is denied.

B. Direct Infringement – Display Right

Although 17 U.S.C. § 106 sets forth six exclusive rights of a copyright holder, the right in question here is the right to display publicly. The statute's provision for the display right states the owner of the copyright has the right "in the case of . . . pictorial, graphic, or sculptural works . . . to display the copyrighted work publicly."[4] 17 U.S.C. § 106(5). In addition, any act of infringement must be volitional. *BWP Media USA, Inc. v. T&S Software Assocs.*, 852 F.3d 436, 444 (5th Cir. 2017).

1. Display

    i. Plain Text

Under the Act, a "display" occurs when a copy of the work is shown "either directly or by means of a film, slide, television image, or *any other device or process*." 17 U.S.C. § 101 (emphasis added). A device or process is defined as "one now known or later developed." *Id*. While the statute does not define show, the Oxford English Dictionary defines show as "to cause or allow to be seen, looked    at,    inspected,    etc."    *Show,*    Oxford    English    Dictionary, https://doi.org/10.1093/OED/2341615215 (last visited July 22, 2025).[5]

A "copy" as defined by the Act is a "material object[] . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101.

---

[4] Pictorial works include photographs. *See* 17 U.S.C. § 101.

[5] Courts often consult dictionary definitions to determine the ordinary meaning of significant statutory terms. *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 371 (5th Cir. 2021).

A copy of a work includes the original *Id*. ("The term 'copies' includes the material object . . . in which the work is first fixed."). Finally, '[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id*.

Thus, under the plain meaning of the Act, a defendant violates an artist's exclusive right to display a work when the defendant without authorization causes any copy of the work to be seen— whether directly or by means of any device or process available when the Act was enacted or developed thereafter.

"From its beginning, the law of copyright has developed in response to significant changes in technology." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 430 (1984). The legislative history reveals that Congress intended copyright protection to be viable into the future regardless of yet to be developed technologies. H.R. Rep. 94–1476, 47, 51 (1976) (proclaiming that the legislation was necessary in part because "technical advances have generated new industries and new methods for the reproduction and dissemination of copyrighted works" and Congress did "not intend to freeze the scope of copyrightable subject matter at the present state of communication technology.").

In considering the display right, the drafters of the act noted that "the display of a visual image of copyrighted work would be an infringement if the image were *transmitted by any method* (by closed or open circuit television, for example, or by a *computer system*) from one place to members of the public elsewhere." *Id*. at 80 (emphasis added).

Based on the statute's language and its legislative history, the Act is concerned not with how a work is shown, but whether a work is shown.

*ii. The "Server Test"*

In *Perfect 10, Inc. v. Amazon.com, Inc.*, the Ninth Circuit announced the server test, which determines liability for direct copyright infringement based on how a copyrighted image is displayed on a website. If a website displays an image by "using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory[,]" that is infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007). If, on the other hand, the same website shows an image to a user by "embedding" a link to it such that a user's browser "interacts with the [third-party] computer that stores the" computer code that represents the image—that is not infringement. *Id*. at 1161. Finding a distinction based on where the images were hosted, the Ninth Circuit reasoned that, under the definitions of "display" and "copies," a defendant committed infringement only when copy of the image was stored on the defendant's server.[6] *Id*. at 1160 ("Because Google's computers [did] not store the [full-sized] photographic images, Google does not have a copy of the images for purposes of the Copyright Act."). In other words, "Google does not have any 'material objects . . . in which a work is fixed . . . and from which the work can be perceived, reproduced, or otherwise communicated' and thus cannot communicate a copy." *Id*. at 1160–61.

Since *Perfect 10*, the Ninth Circuit has applied and upheld the server test in multiple cases.[7] In *Hunley v. Instagram, LLC*, the appellants posted some of their copyrighted material on Instagram, which appellees then displayed in online articles by embedding the photographs. 73 F. 4th 1060, 1065–67 (9th Cir. 2023). Affirming the district court, the *Hunley* Court held the

---

[6] The Court recited the definitions of "display," "copies," and "fixed"; noting precedent that an image stored on a computer is a "copy"; then concluding that "[t]he computer owner shows a copy . . . when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer.".

[7] *E.g.*, *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1072–74 (9th Cir. 2021); *Evox Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309, at *1 (9th Cir. Dec. 6, 2022).

appellants did not display a copy of the appellants' photographs, given that neither appellee stored appellants' photographs on its servers. *Id*. at 1077. *Hunley* concluded that *Perfect 10* did not limit the server test to specific types of websites, such as search engines, as the server test depends on the *method used* for displaying a photo—not the context in which the photo is displayed. *Id*. at 1070–71. The *Hunley* Court also distinguished *Perfect 10* from the Supreme Court's decision in *Am. Broad. Cos. v. Aereo* (discussed *infra*), given its understanding that the server test was crafted out of the Copyright Act's fixation requirement—not the perceptibility requirement. *Id*. at 1076.

### iii. The server test contravenes the language and history of the Copyright Act

When interpreting the Copyright Act, "we follow the text of the statute." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 184 (2022) (citation omitted). "When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.'" *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013) (quoting *In re Nowlin*, 576 F.3d 258, 261–62 (5th Cir. 2009). And "courts often apply a statute's highly general language in light of the statute's basic purposes." *Am. Broad. Cos. V. Aereo*, 573 U.S. 431, 450 (2014). The Act's "significant purpose" is to "encourage the origination of creative works by attaching enforceable rights to them." *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y.) (quoting *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001).

The Copyright Act's text conflicts with the server test. As discussed above, the *Perfect 10* Court reasoned that copyrighted works were not displayed through embedding because the works were never stored on the alleged infringer's servers. *Perfect 10*, 508 F.3d at 1160. Yet any suggestion that the location of where the image is stored is absent from the text and purpose of the Act. The plain text of the Act is clear that "[t]o 'display' a work means to show a copy of it, either directly or by . . . any other device or process[.]" 17 U.S.C.§ 101. In other words, a display of a

work occurs when it is caused to be seen, regardless of the method of display. Under the server test, however, the display of an image can only occur when an infringer uses "a computer to fill a computer screen with a copy of the photographic image *fixed in the computer's memory*." *Perfect 10*, 508 F.3d at 1160 (emphasis added). The Court there wrote that a "computer owner shows a copy 'by means of a . . . device or process' when the owner uses the computer to fill the computer screen with the photographic image stored on that computer, or by communicating the stored image electronically to another person's computer." *Id*. But a server-storage requirement adds a condition absent from the Act's plain text.

IHeartMedia argues under the server test that it has not infringed the Act because the embedded video remains on a third-party's server and is not fixed in IHeartMedia's servers and thus is not a display. But this conclusion is contrary to the text and legislative history of the Copyright Act. The Act defines to "display" as "to show a copy of" a work, 17 U.S.C. § 101, not to make, store on its own server**,** and then show a copy of the copyrighted work. *See id*. And the definition of "display" confirms a liberal reading of the statute, as it emphasize that *any* means— including both direct and indirect means—by which a copy is shown are covered by the Section 106(5) right of display. *See* 17 U.S.C. §101. The Act specifically states "display" includes using "*any device or process*" to show a work. *Id*. (emphasis added). In sum, neither Section 106(5), nor the Copyright Act's definitions require that an alleged infringer possess a physical copy of a copyrighted work to "display" that work.

Although the copy of the work being shown must be a material object in which the copyright work is fixed, *see* 17 U.S.C.§ 101; *see also Perfect 10*, 508 F.3d at 1160 ("A photographic image is a work that is 'fixed in a tangible medium of expression,' for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other

storage device)."), the text of the statute provides that a "copy" of the work can be "fixed *in any method now known or later developed*, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101 (emphasis added). The Act adds that a work is "fixed" in a "tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived . . . . for a period of more than transitory duration." *Id.*

Relying on this language, the *Perfect 10* Court held that an "image stored in the computer is the 'copy' of the work for purposes of copyright law" *Perfect 10*, 508 F.3d at 1160 (quoting *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 517–18 (9th Cir. 1993). But *MAI*, which *Perfect 10* relied on, considered the copying of software programs and, *in that context*, found that a "copy" was made when the program was transferred from one computer to another computer's memory. *MAI Sys.*, 991 F.2d at 518. *Mai* did not rule out other methods "now known or later developed," 17 U.S.C. § 101, that a copy may be fixed in. The Court sees no textual reason to exclude "embedding" from the Act—a photograph may be "fixed" in an embedded code in a "sufficiently permanent or stable [manner]," such that a visitor to IHeartMedia's website perceives the Photograph for a "period of time more than transitory duration." 17 U.S.C. § 101; AC ¶ 26.

Accordingly, the Court concludes that the server test runs *contra* to the text and legislative history of the Copyright Act. A defendant who embeds a copyrighted work on a webpage, without storing the image on its servers, may infringe the copyright holder's display rights.[8]

---

[8] *See Great Bowery v. Best Little Sites*, No. 21-cv-567-DBB-JCB, 2024 WL 3416038, at *9–10 (D. Utah July 15, 2024) (concluding that the server test is "unpersuasive" and that such conclusion is "compelled by the text of the Copyright Act"); *Prepared Food Photos Inc. v. Chicken Joes, LLC*, No. 23-CV-3895 (JGCL), 2024 WL 382529, at *1 (S.D.N.Y. Feb. 1, 2024) (rejecting the server test); *McGucken v. Newsweek*, No. 19 Civ. 9617, 2022 WL 836786, at *5–6 (S.D.N.Y. Mar. 21, 2022) (declining to apply the server test and noting "that [it] has not been widely adopted outside of the Ninth Circuit"); *Nicklen v. Sinclair Broadcast Grp., Inc.*, 551 F. Supp. 3d 188, 194–95 (S.D.N.Y. 2021) (rejecting the server test for purposes of the right to display); *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 595–96 (S.D.N.Y. 2018) (noting that "this Court is skeptical that *Perfect 10* correctly interprets the display right of the Copyright Act" and distinguishing *Perfect 10* on the facts); *Leader's Inst., LLC v. Jackson,* No. 3:14-cv-

Applying this conclusion to the facts, IHeartMedia published on its website an "in Memoriam" article that embedded a third-party's YouTube video which caused the Photograph to appear on IHeartMedia's website. A reader interacting with the article would have seen the Photograph even if the reader took no action to retrieve or navigate to the YouTube video. Under the plain meaning of "display," IHeartMedia "showed" the Photograph by embedding it in a way that a user would see the image while reading the article thus infringing on Plaintiff's exclusive right to display the Photograph.

*iv. American Broadcasting Cos., Inc. v. Aereo, Inc.*

The Court finds more support for its conclusion in *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014), which also appears to disagree with the server test.

In *Aereo*, the Court rejected any distinction between different technological means, reasoning it "means nothing to the subscriber" as the technology was "invisible to subscriber and broadcaster alike" and by which Aereo "perform[ed] the same work"; "show[ed] the same images and ma[de] audible the same sounds." *Aereo*, 573 U.S. at 448. The Court ultimately concluded the technological distinctions were not adequate to avoid liability under the Copyright Act. *Id*. at 451; *see also Goldman*, 302 F. Supp. 3d at 595 (determining this reasoning in *Aereo* "strongly support[s]" rejecting the server test).

In *Hunley*, the Ninth Circuit addressed *Aereo*, noting that the server test was crafted out of the Copyright Act's fixation requirement—not the perceptibility requirement. *Hunley*, 73 F.4th at 1076. Still, the fixation requirement undergirding the server test rests on the nature of the background technological process, specifically, on the technicality that an embedded link points a

---

3572, 2017 WL 5629514, at *11 (distinguishing *Perfect 10* on the facts, and noting that "to the extent *Perfect 10* makes actual possession of a copy a necessary condition to violating a copyright owner's exclusive right to display her copyrighted works, the Court respectfully disagrees with the Ninth Circuit.").

user's web browser to an author's image "fixed" elsewhere (rather than to a file on the operator's own computer server) and that distinction was rejected as immaterial in *Aereo*. Applying the *Aereo* Court's reasoning here, whether IHeartMedia displays the image directly from its server or it embeds the photo (relying on a third-party server to store the image), those technological distinctions are "invisible" to the user. Copyrighted material is to be analyzed "as presented to, and perceptible by, [a] user." *New York Times Co. v. Tasini*, 533 U.S. 483, 499 (2001) (citing 17 U.S.C. §§ 101–102). Because the Photographs are seamlessly integrated into IHeartMedia's webpage such that a user cannot distinguish between a stored image and an embedded image, *Aereo* supports a finding that the Photograph is displayed on the website.

### v. Policy

Proponents of the server test speculate that declining to apply the server test would "cause a tremendous chilling effect on the core functionality of the web" and "would impose far-reaching and ruinous liability . . . grinding the internet to a halt." *Goldman*, 302 F. Supp. 3d at 596; *Nicklen*, 551 F. Supp. 3d at 195. Here, Defendant presents a simpler policy argument, asserting that the Server Test should be adopted as simply "good policy," urging that the test should be adopted as a "straightforward, bright-line test for determining whether images displayed on a website violate the Copyright Act." ECF No. 13 at 15 (quoting *Great Bowery v. Best Little Sites*, 671 F. Supp. 3d 1297, 1308 (D. Utah 2023). Perhaps there are good policy arguments for the sever test. But "between policy arguments and the statutory text . . . the text [of the Act] must prevail." *UMG Recordings v. Grande Comm. Networks*, 118 F.4th 697, 723 (5th Cir. 2024), *petition for cert. filed*, No. 24-967. In any event, policy arguments are "best directed at Congress." *Id*.

The Court determines that the plain language of the Copyright Act, the legislative history underlying its enactment, and Supreme Court jurisprudence conflict with Defendant's assertions

15

that the physical location or possession of the Photograph determines who may or may not have "displayed" a work within the meaning of the Copyright Act. Thus, as to the second element—copying constituent elements of the work that are copyrightable--the Plaintiff has met its pleading burden.

The court now turns to the remaining elements of a direct infringement claim.

2. Publicly

The owner of the copyrighted work has the exclusive right to display the work publicly. 17 U.S.C. § 106(5). To display a work "publicly" includes "to transmit or otherwise communicate a . . . display of the work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101.

Here, IHeartMedia published the "in Memoriam" article, including the embedded Photograph, on its publicly accessible website. Defendant does not argue that the display was not public. As such, IHeartMedia communicated a display of the Photograph to the public.

3. Volitional Conduct

In direct copyright infringement cases, the Fifth Circuit recognizes that volitional conduct is required, which is "'conduct by a person who causes in some meaningful way an infringement.'" *BWP Media USA, Inc.* 852 F.3d at 440 n.1.(quoting *Costar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004). Here, IHeartMedia's website contained code,[9] presumably inserted by IHeartMedia or its agents, that without action on the part of a viewer displayed the Photograph. In

---

[9] The Defendant provides the following code that is says enabled IHeart to embed the Photograph: <iframe width="709" height="532" src=https://www.youtube.com/embed/gP1Wv9IB9mU title="Tom Waits &amp; Chuck E. Weiss – Rains On Me (Alternate Version)" frameborder="0" allow=accelerometer; autoplay; clipboard-write; encrypted-media; gyroscope; picture-in-picture; web-share" referrerpolicy="strict-origin-when-cross-origin" allowfullscreen></iframe>. ECF No. 13 at 11.

order to embed the copyrighted work, Defendant had to navigate to a third-party website and obtain the URL. Defendant then had to insert the URL into the article published on its website. Thus, IHeartMedia's volitional conduct caused the infringement at issue here.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 13) is **DENIED**.

Plaintiff has abandoned its claim of infringement of the right of distribution. Plaintiff's claim for infringement of the right of display remains pending.

It is so **ORDERED**.

**SIGNED** this 29th day of July, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE